**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 09-20628-CR-GRAHAM**

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

**v.**

**LUCIA PELUFFO,**                                **REPORT AND RECOMMENDATION**

      **Defendant.**

_____/

On or about May 14, 2010, court-appointed defense counsel Peter T. Patanzo ("Counsel") submitted a voucher application numbered FLS 10 2712 with appended time sheets requesting $78,967.15 as final payment for attorney's fees and costs pursuant to the Criminal Justice Act (the "CJA"). Counsel also supplied detailed time sheets and a letter of explanation dated May 14, 2010 (the "Letter of Explanation") in support of his voucher application. Counsel represented Defendant Lucia Peluffo ("Defendant") for approximately eight (8) months from his appointment on July 31, 2009 until April 7, 2010.

Counsel seeks $78,967.15 in his application, an amount which exceeds the $9,700.00 statutory maximum allowed for representation in non-capital felony cases under the CJA. As a result, United States District Court Judge Donald L. Graham entered an Order of Reference **[DE # 808]** referring the voucher application to the undersigned for a Report and Recommendation as to whether the fees requested by Counsel are appropriate. *See* 28 U.S.C. § 636(a)*; see also* United States District Court for the Southern District of Florida Magistrate Judge Rules.

## Criminal Justice Act and Guidelines for Administration
## of the Criminal Justice Act

The United States Judicial Conference developed the Guidelines for Administration of the Criminal Justice Act (the "Guidelines") to assist courts in the application of the provisions of the CJA. *See In re Burger,* 498 U.S. 233, 234, 111 S.Ct. 628 (1991). In the Guidelines, judges are "urged to compensate counsel at a rate and in an amount sufficient to cover appointed counsel's general office overhead and to ensure adequate compensation for representation provided." *See* Section §6.02(B) of the Guidelines.

The CJA at 18 U.S.C. §3006A(d)(1) provides that at the conclusion of CJA representation, an appointed attorney shall be compensated for time expended in court and for time "reasonably expended out of court" and shall be reimbursed "for expenses reasonably incurred." The district court, as the body empowered to "fix" CJA appointed counsel compensation, has the statutory authority and discretion to determine what is a reasonable expense or a reasonable use of billable time. 18 U.S.C. §3006A(d)(5); *U.S. v. Griggs,* 240 F.3d 974 (11th Cir. 2001). In order for the recommended fee amount to exceed the statutory maximum, however, the district court *must* first certify that the case involves "complex" or "extended" representation. 18 U.S.C. §3006A(d)(3). Second, the district court must conclude that the amount is necessary to provide Counsel with fair compensation.

A case may be considered "complex" if the legal or factual issues in a case are unusual, thus requiring the expenditure of more time, skill and effort by the lawyer than would normally be required in an average case. *See* Section §2.22B(3) of the Guidelines. A case may be considered "extended" if more time is reasonably required for total processing than the average case, including pre-trial and post-trial hearings. *Id.*

-2-

## DISCUSSION

### This Case Was Complex

Under the Guidelines, in order to approve an compensation in excess of the statutory maximum, I must first find that the representation was either complex or extended. This case was complex for several reasons.

First, the very nature and number of charges involved in this case required Counsel to expend more time, skill and effort than normally required in the average case. This case commenced when the grand jury issued an Indictment **[DE # 3]** naming Defendant and "nineteen Indicted co-defendants." (Letter of Explanation at 1).

The Indictment contained twenty (20) counts. The government alleged that Defendant and the codefendants were involved in a mortgage fraud conspiracy scheme to recruit straw buyers to purchase residential properties. The purpose of the scheme was to obtain money from various banks and lending institutions to finance the purchase of the properties through materially false representations and fraudulent pretenses concerning the true purchasers of the homes.

The scheme required the straw buyers to pose as home buyers when, in fact, the straw buyers were not to be either the true owners of the homes or responsible for making the monthly mortgage payments. Rather, other unnamed third persons were to be the true owners of the properties. In the scheme, the straw buyers would purchase the homes at highly inflated prices by obtaining mortgages on the properties. The true owners of the properties would fail to make payments on the mortgages and default on the loans. The various banks and lending institutions would be forced to foreclose on the properties,

-3-

suffering large losses.

To further complicate matters, many of the defendants involved in this scheme were related. The fact that many of the defendants were related or closely associated made Counsel's representation in this case even more complicated.

The government charged Defendant with conspiracy to commit mail and wire fraud, mail fraud and wire fraud. Defendant faced a maximum sentence of twenty (20) years imprisonment for Count I and twenty (20) years imprisonment for each of Counts V, VII, VIII, IX, XI, XVI, XVII and XVIII.

Second, the "discovery in this matter was voluminous, consisting of well over 50,000 documents for review in preparation for trial. These documents consisted of mortgage documents, loan files, bank records and other real estate documents. According to the government's allegations, my client had a part in preparing or causing to be prepared all the documents listed. Making matters that much more complex, by the government's own admission, several thousand documents were fraudulent or forged. This necessitated further scrutiny of the documents as well as comparing and contrasting documents, signatures and handwritings as part of preparing this matter for trial." (Letter of Explanation at 1-2). The sheer volume of documents which Counsel had to review in order to effectively represent Defendant rendered this case more complex than the average case.

Third, the representation of Defendant required Counsel to attend a number of hearings and status conferences in this case. Counsel made appearances at a detention hearing (7/29/09) and an arraignment proceeding (8/6/09). Counsel argued at these hearings in addition to appearing at a calendar call (2/10/10) and a number of status conferences (9/4/09, 10/7/09, 12/16/09, 1/13/10, 1/19/10, 1/26/10, 2/10/10 and 2/12/10).

Fourth, this case was more complex than the average case because Defendant pled not guilty and "proceeded to trial on February 16, 2010. [The trial] continued thereafter for an eight (8) week period." (Letter of Explanation at 1). The case ended in a mistrial. **[See DE # 664]**.

Fifth, Counsel's office is located in Ft. Lauderdale, Florida. As the trial lasted eight (8) weeks, Counsel incurred a substantial amount of time traveling to and from Miami for court  appearances and to meet with his client.

It is clear from the record that the legal and factual issues in this case were unusual. Consequently, I conclude that this matter required the expenditure of more time, skill and effort by Counsel than would normally be required in the average case. As I have concluded that the representation provided by Counsel was complex, I must review the voucher to determine the appropriate amount for which Counsel should be compensated in excess of the $9,700.00 statutory maximum.

## *Voucher Amount - Administrator's Review*

The Court's CJA administrator first reviewed the voucher for compliance with the Guidelines and mathematical accuracy prior to my review. Counsel requested compensation for 200.4 in-court hours.[1]  The CJA administrator reduced the number of in-court hours to 198.4 and calculated the total sought for in-court hours at $24,725.00.

The CJA administrator also reviewed the 423.8 out-of-court hours sought by Counsel. Counsel sought compensation for 115.3 hours for "Interviews and conferences" and 191.5

---

[1]

Counsel failed to identify the total dollar amount sought for either in-court or out-of-court hours. In the future, Counsel is urged to fully complete the CJA 20 form for the ease of review by the CJA administrator and the Court.

hours for "Obtaining and reviewing records."   Counsel also sought compensation for 35 hours for "Legal research and brief writing" and 82 hours of "Travel time."   Counsel listed no hours for "Investigative and Other work."

The CJA administrator made a number of changes to the out-of-court hours listed in the voucher.  The CJA administrator first increased the number of hours sought by Counsel for "Obtaining and reviewing records" to 193.5, increased the number of hours sought for "Travel time" to 86.0 hours and added 2.2 hours for "Investigative and other work."

Counsel further sought $1,400.40 in "Travel Expenses" and $419.25 in "Other Expenses."  The CJA administrator made no changes to either amount.  After making these adjustments, the CJA administrator concluded that the total amount sought for out-of-court hours was $53,232.00 and the overall total amount documented by Counsel in the voucher increased from $78,967.15 to $79,776.65.

## In-Court Hours[2]

Counsel sought a total of 200.4 in-court hours.  The CJA administrator reduced this number to 198.4 hours for a total of $24,725.00.  I approve this amount as reasonable.

## Out-of-Court Hours

In the voucher, Counsel sought 423.8 out-of-court hours.  The CJA administrator reviewed the voucher and increased the total number of out-of-court hours to 432.0 for a total of $53,232.00.

Although the vast majority of Counsel's time entries are appropriate, Counsel included

---

2

The undersigned defers to the Court Clerk to verify all in-court time and expense allowances.

some entries that were not sufficiently specific for the undersigned to determine the purpose of the entries. Following submission of his voucher, I questioned Counsel about these entries. Counsel readily clarified all of the questionable entries.

Only one troublesome entry remains, however, and I recommend that this entry be eliminated:

> 7/29/09     Other:                                    2.0 hrs
>
> met with family . . .
> Clerk's office paid bond . . . etc.,

The "Supplemental Instructions for Completing CJA20 Vouchers" form (the "Supplemental Instructions") provides that "[s]ervices of a personal nature, such as assisting the defendant in the disposition of his/her personal property, or providing legal assistance in matters unrelated to the litigation of the case even though incidental to the defendant's arrest, are not compensable." Counsel explained that the purpose of this two hour period spent meeting with Defendant's family was to assist the family in completing bond paperwork for Defendant's release.

This entry is not compensable under the CJA, however, because it was unrelated to the litigation of the case. Time spent "holding the hand" of Defendant's family is not compensable under the CJA as it is time that did not contribute to Defendant's defense. Accordingly, Counsel should not be compensated for the 2.0 hours Counsel spent meeting with Defendant's family on July 29, 2009. This mandates a reduction of $220.00.

I find, however, that the remaining out-of-court hours listed in the voucher application are appropriate. Factoring in my deductions, I recommend that Counsel should be paid

-7-

$53,012.00 for his out-of-court hours.

In making this recommendation, I have been mindful that when considering awards to Counsel under the CJA, courts have long recognized that there is an inherent tension between the policies underlying the CJA: "[o]n the one hand, representing indigent defendants is a form of public service; thus, the [CJA] was never intended to provide full compensation for an attorney's services or to provide fees equal to those charged in private practice. . . . On the other hand, the Act was also intended to provide indigent defendants with meaningful representation by competent counsel". *United States v. Mukhtaar,* 2008 WL 2151798, at * 2 (S.D. N.Y. May 21, 2008) (citations omitted).    As other courts have explained, the CJA "was intended to partially alleviate the financial burden associated with provision of these services which had been traditionally provided pro bono.  The spirit of the statute is lost once the CJA representation of indigent defendants loses its essentially pro bono nature." *United States v. Diaz,* 802 F.Supp. 304, 307 (C.D. Cal. 1992) (quoting *United States v. Carnevale,* 624 F.Supp. 381, 383 (D. R.I. 1985)).  In considering these principles with respect to the instant case, I conclude that an award of $53,012.00 for out-of-court hours, is fair, although admittedly not full compensation for Counsel's services.

### Expenses

Counsel sought $1,400.40 in "Travel Expenses."    Counsel also sought $419.25 in "Other Expenses." The CJA administrator did not change either of these amounts.  I hereby approve these amounts.

## CONCLUSION

I commend Counsel for his professionalism and willingness to take this appointment; the undersigned is appreciative of his efforts. Notwithstanding this appreciation, as I have often quoted, when appropriate and in the spirit of the CJA: "What is commendable, however, is not necessarily compensable." *U.S. v. Smith,* 76 F.Supp.2d 767, 769 (S.D. Texas 1999). It is with this sentiment in mind that I recommend that some of the time incurred by Counsel be considered non-reimbursable.

To be clear, I am not making this recommendation for a lack of appreciation, rather, it is because the courts have the inherent obligation to ensure that claims for taxpayer provided monies are properly spent. Accordingly, I am constricted by the rules established in the Guidelines and in the Supplemental Instructions in awarding Counsel full compensation for all time incurred in this matter.

As I explained above, however, because the representation in this case was complex, I recommend that Counsel be reimbursed for an amount in excess of the statutory maximum of $9,700.00 in this case. Based upon my review of the time sheets, the May 14, 2010 Letter of Explanation, the docket and filings in this case, I RECOMMEND that Counsel be paid $79,556.65 as fair and final compensation for his work in this case.

In accordance with 28 U.S.C. §636(b)(1), the parties shall have fourteen (14) days from receipt of this Report and Recommendation to serve and file any written objections with the Honorable Donald L. Graham, United States District Judge.

Signed this ___ day of October, 2010.

**PETER R. PALERMO**
**SR. UNITED STATES MAGISTRATE JUDGE**

Copies furnished to:

Peter T. Patanzo, Esq.
Lucy Lara, CJA administrator

-10-