UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 09-20628-CR-GRAHAM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

LUCIA PELUFFO,                      **REPORT AND RECOMMENDATION**

    Defendant.
_____/

On or about June 1, 2011, court-appointed defense counsel Peter T. Patanzo ("Counsel") submitted a voucher application numbered FLS 10 2310 with appended time sheets requesting $71,027.20 as final payment for attorney's fees and costs pursuant to the Criminal Justice Act (the "CJA"). Counsel also supplied detailed time sheets and a letter of explanation dated June 1, 2011 (the "Letter of Explanation") in support of this voucher application.

Defendant Lucia Peluffo ("Defendant") was tried twice in this case. The first trial took place from February 16, 2010 to April 7, 2010. That trial lasted thirty-four (34) days. That trial ended in a mistrial for Defendant. **[See DE # 664]**. Counsel was already compensated for that work in a previous order of this Court. **[See DE # 963]**.

Defendant was retried and counsel now seeks compensation for time spent in this matter related to the second trial during the time period May 10, 2010 through April 6, 2011. Counsel seeks $71,027.20 in his application, an amount which exceeds the $9,700.00 statutory maximum allowed for representation in non-capital felony cases under the CJA. As a result, United States District Court Judge Donald L. Graham entered an Order of Reference **[DE # 1261]** referring the voucher application to the undersigned for a Report and

Recommendation as to whether the fees requested by Counsel are appropriate. *See* 28 U.S.C. § 636(a); *see also* United States District Court for the Southern District of Florida Magistrate Judge Rules.

### Criminal Justice Act and Guidelines for Administering the CJA and Related Statutes

The United States Judicial Conference developed the Guidelines for Administering the CJA and Related Statutes (the "Guidelines") to assist courts in the application of the provisions of the CJA. *See In re Burger,* 498 U.S. 233, 234, 111 S.Ct. 628 (1991). In the Guidelines, judges are "urged to compensate counsel at a rate and in an amount sufficient to cover appointed counsel's general office overhead and to ensure adequate compensation for representation provided." *See* Section §630.20 of the Guidelines.

The CJA at 18 U.S.C. §3006A(d)(1) provides that at the conclusion of CJA representation, an appointed attorney shall be compensated for time expended in court and for time "reasonably expended out of court" and shall be reimbursed "for expenses reasonably incurred." The district court, as the body empowered to "fix" CJA appointed counsel compensation, has the statutory authority and discretion to determine what is a reasonable expense or a reasonable use of billable time. 18 U.S.C. §3006A(d)(5); *U.S. v. Griggs,* 240 F.3d 974 (11th Cir. 2001). In order for the recommended fee amount to exceed the statutory maximum, however, the district court *must* first certify that the case involves "complex" or "extended" representation. 18 U.S.C. §3006A(d)(3). Second, the district court must conclude that the amount is necessary to provide Counsel with fair compensation.

A case may be considered "complex" if the legal or factual issues in a case are unusual, thus requiring the expenditure of more time, skill and effort by the lawyer than

would normally be required in an average case. See Section §230.23.40(b) of the Guidelines. A case may be considered "extended" if more time is reasonably required for total processing than the average case, including pre-trial and post-trial hearings. *Id.*

## DISCUSSION

### This Case Was Complex

Under the Guidelines, in order to approve an compensation in excess of the statutory maximum, I must first find that the representation was either complex or extended. This case was complex for several reasons.

First, the very nature and number of charges involved in this case required Counsel to expend more time, skill and effort than normally required in the average case. This case originally commenced when the grand jury issued an Indictment **[DE # 3]** naming Defendant and nineteen co-defendants.

The original Indictment contained twenty (20) counts. The government alleged that Defendant and the codefendants were involved in a mortgage fraud conspiracy scheme to recruit straw buyers to purchase residential properties. The purpose of the scheme was to obtain money from various banks and lending institutions to finance the purchase of the properties through materially false representations and fraudulent pretenses concerning the true purchasers of the homes.

The scheme required the straw buyers to pose as home buyers when, in fact, the straw buyers were not to be either the true owners of the homes or responsible for making the monthly mortgage payments. Rather, other unnamed third persons were to be the true owners of the properties. In the scheme, the straw buyers would purchase the homes at

highly inflated prices by obtaining mortgages on the properties. The true owners of the properties would fail to make payments on the mortgages and default on the loans. The various banks and lending institutions would be forced to foreclose on the properties, suffering large losses.

Originally, the government charged Defendant with conspiracy to commit mail and wire fraud, mail fraud and wire fraud. In the "retrial, the government superseded the indictment [additionally] charging [Defendant] . . . with several substantive counts of Making False Statements in violation of Title 18 U.S.C. § 1001(a)." (Letter at 1). In the Superseding Indictment, the government charged Defendant with thirteen counts: Counts I (conspiracy to commit mail and wire fraud), IV (mail fraud), V (mail fraud), VIII (wire fraud), XII - XV (wire fraud), and XVIII - XXII (false statements). Defendant faced a term of imprisonment of twenty (20) years for the conspiracy and substantive mail and wire fraud charges and a term of five (5) years imprisonment for each of the false statement charges.

Second, the discovery in this matter was voluminous. "The discovery and defense materials . . . consisted of thousands upon thousands of banking, lending and mortgage documents, as well as event summaries, scheme summaries, witness interviews, depositions, sworn statements, civil lawsuit state court pleadings, trial transcripts, and defendant statements most of which were contained within 23 CD's provided by the government. The government's estimation of the discovery totaled approximately 35 banker boxes of material containing more than 87,500 documents in total." (Letter of Explanation at 1 - 2).

Third, the representation of Defendant required Counsel to attend a number of hearings and status conferences in this case. Plaintiff made appearances at an arraignment

proceeding (6/8/10), a hearing on a motion to travel outside the country (5/27/10) and a hearing on juror questionnaires (10/12/10). Counsel argued at these hearings in addition to appearing at a calendar call (10/20/10) and a number of status conferences (6/16/10, 7/14/10, 8/10/11 and 9/8/10).

Fourth, this case was more complex than the average case because Defendant entered a plea of not guilty and proceeded to trial on October 25, 2010. The trial ended on November 22, 2010. "Defendant was convicted of all five (5) substantive counts of Making False Statements which required the additional preparation, document review and research for a sentencing hearing which gave rise to several complex legal issues mostly dealing with the government's loss calculation and how loss was to be attributed to [Defendant] under the facts adduced at trial for a violation of Title 18 U.S.C. § 1001, if at all." (Letter of Explanation at 2). Fifth, Counsel's office is located in Ft. Lauderdale, Florida. As the trial lasted for four (4) weeks, Counsel incurred a substantial amount of time traveling to and from Miami for court appearances and to meet with his client.

It is clear from the record that the legal and factual issues in this case were unusual. Consequently, I conclude that this matter required the expenditure of more time, skill and effort by Counsel than would normally be required in the average case. As I have concluded that the representation provided by Counsel was complex, I must review the voucher to determine the appropriate amount for which Counsel should be compensated in excess of the $9,700.00 statutory maximum.

### *Voucher Amount - Administrator's Review*

The Court's CJA administrator first reviewed the voucher for compliance with the Guidelines and mathematical accuracy prior to my review. Counsel requested compensation

for 164 in-court hours totaling $20,500.00. The CJA administrator reduced the number of in-court hours to 160.5 and the total sought to $20,062.50.

The CJA administrator also reviewed the 391.1 out-of-court hours sought by Counsel. Counsel sought compensation for 96.3 hours for "Interviews and conferences" and 116.3 hours for "Obtaining and reviewing records." Counsel also sought compensation for 104.5 hours for "Legal research and brief writing" and 74 hours of "Travel time." The CJA administrator made no changes to either the number of out-of-court hours listed in the voucher or the total amount sought by Counsel ($48,887.50) for this work.

Counsel further sought $1,317.20 in "Travel Expenses" and $322.50 in "Other Expenses." The CJA administrator slightly adjusted the amount of Travel Expenses to $1,256.80. The CJA administrator did not change the amount of "Other Expenses." After making this one adjustment, the CJA administrator concluded that the overall total amount documented by Counsel in the voucher decreased slightly from $71,027.20 to $70,529.30.

### In-Court Hours[1]

Counsel sought a total of 164 in-court hours. The CJA administrator reduced this number to 160.5 hours for a total of $20,062.50. I approve this amount as reasonable.

### Out-of-Court Hours

In the voucher, Counsel sought 391.1 out-of-court hours totaling $48,887.50. The CJA administrator reviewed the voucher and made no changes to either of these two amounts.

---

[1] The undersigned defers to the Court Clerk to verify all in-court time and expense allowances.

Although the vast majority of Counsel's time entries are appropriate, Counsel included a few entries that were not sufficiently specific for the undersigned to determine the purpose of the entries. I recommend that this entry be reduced:

| | | | |
|---|---|---|---|
| 10/13/10 | Research; evidence stuff; rule compl; Peluffo statement | 3.0 hours | [reduce to 2.0 hours] |

I recommend that the above entry be reduced because the undersigned was unable to articulate the purpose of this entry. As a result, it is not possible for the Court to determine if the entire entry reflects an appropriate use of billable time.

Counsel also included time spent preparing for and drafting two simple motions that appears excessive. On December 3, 2010, Counsel billed one (1) hour of time for writing a simple five (5) line motion for "extension of time [to file] post conviction motions. I recommend that this entry be reduced to 0.5 hours.

Similarly, on August 17, 2010, Counsel billed 0.5 hours for drafting a short motion for permission to travel to Ft. Myers, Florida. Counsel also billed 1.3 hours for conferences with Defendant to discuss the simple filing as well as 0.2 hours to review the one page order granting the motion. In sum, Counsel billed 2.0 hours of time related to this simple motion for permission to travel. I recommend that Counsel should only be compensated for a total of 1.0 hour for these entries.

I find, however, that the remaining out-of-court hours listed in the voucher application are appropriate. Factoring in my deductions (totaling 2.5 hours), I recommend that Counsel should be paid $48,575.00 for his out-of-court hours.

In making this recommendation, I have been mindful that when considering awards to Counsel under the CJA, courts have long recognized that there is an inherent tension between the policies underlying the CJA: "[o]n the one hand, representing indigent defendants is a form of public service; thus, the [CJA] was never intended to provide full compensation for an attorney's services or to provide fees equal to those charged in private practice. . . . On the other hand, the Act was also intended to provide indigent defendants with meaningful representation by competent counsel". *United States v. Mukhtaar*, 2008 WL 2151798, at * 2 (S.D. N.Y. May 21, 2008) (citations omitted). As other courts have explained, the CJA "was intended to partially alleviate the financial burden associated with provision of these services which had been traditionally provided pro bono. The spirit of the statute is lost once the CJA representation of indigent defendants loses its essentially pro bono nature." *United States v. Diaz*, 802 F.Supp. 304, 307 (C.D. Cal. 1992) (quoting *United States v. Carnevale*, 624 F.Supp. 381, 383 (D. R.I. 1985)). In considering these principles with respect to the instant case, I conclude that an award of $48,575.00 for out-of-court hours, is fair, although admittedly not full compensation for Counsel's services.

### Expenses

Counsel sought $1,317.20 in "Travel Expenses." Counsel also sought $322.50 in "Other Expenses." The CJA administrator reduced the amount of "Travel Expenses" to $1,256.80 but did not change the amount of "Other Expenses" sought by Counsel. I hereby approve $1,256.80 in "Travel Expenses" and $322.50 in "Other Expenses."

## CONCLUSION

I commend Counsel for his professionalism and willingness to take this appointment; the undersigned is appreciative of his efforts. Notwithstanding this appreciation, as I have often quoted, when appropriate and in the spirit of the CJA: "What is commendable, however, is not necessarily compensable." *U.S. v. Smith,* 76 F.Supp.2d 767, 769 (S.D. Texas 1999). It is with this sentiment in mind that I recommend that some of the time incurred by Counsel be considered non-reimbursable.

To be clear, I am not making this recommendation for a lack of appreciation, rather, it is because the courts have the inherent obligation to ensure that claims for taxpayer provided monies are properly spent. Accordingly, I am constricted by the rules established in the Guidelines in awarding Counsel full compensation for all time incurred in this matter.

As I explained above, however, because the representation in this case was complex, I recommend that Counsel be reimbursed for an amount in excess of the statutory maximum of $9,700.00 in this case. Based upon my review of the time sheets, the June 1, 2011 Letter of Explanation, the docket and filings in this case, I RECOMMEND that Counsel be paid $70,216.80 as fair and final compensation for his work in this case.

In accordance with 28 U.S.C. §636(b)(1), the parties shall have fourteen (14) days from receipt of this Report and Recommendation to serve and file any written objections with the Honorable Donald L. Graham, United States District Judge.

Signed this 30 day of August, 2011.

**PETER R. PALERMO**
**SR. UNITED STATES MAGISTRATE JUDGE**

Copies furnished to:

    Peter T. Patanzo, Esq.
    Lucy Lara, CJA administrator